# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

**LOUISIANA MINERALS, LTD**      **CIVIL ACTION NO. 22-145**

**VERSUS**      **JUDGE JERRY EDWARDS, JR.**

**WEYERHAEUSER COMPANY**      **MAG. JUDGE MARK L. HORNSBY**

## MEMORANDUM RULING & ORDER

Louisiana Minerals, Ltd. ("LML") filed the instant suit against Weyerhaeuser Company ("Weyerhaeuser") asserting that Weyerhaeuser has breached a 1986 Timber Sale and Lease Contract ("Timber Lease") by entering into unauthorized third-party agreements that impinge upon LML's mineral rights.[1] LML seeks damages for harm caused by Weyerhaeuser's alleged breach of contract and a declaration of the parties' rights under the Timber Lease to preclude Weyerhaeuser's "unauthorized" activity going forward.[2] The bench trial of this case is set for August 4, 2025.

Before the Court is LML's *Daubert* Motion or Alternative Motion in Limine to Exclude or Limit the Testimony of Certain Weyerhaeuser's Experts (the "Hodges et al Motion") (R. Doc. 105). For the reasons below, this motion is **GRANTED IN PART AND DENIED IN PART.**

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is

---

[1] R. Doc. 1-1.
[2] R. Doc. 1-1 at 3-4, ¶¶ 9, 10.

qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[3]

"The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual possesses the requisite qualifications" to render an opinion on a particular subject matter.[4] Apart from determining the qualifications of the expert, the Court must act as a "gate-keeper" to ensure that the proffered expert testimony is "both reliable and relevant."[5] The reliability prong mandates that expert opinion "be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief."[6] The relevance prong requires the proponent to demonstrate that the expert's "reasoning or methodology can be properly applied to the facts in issue."[7]

"To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."[8] "Experience alone or in conjunction with other

---

[3] FED. R. CIV. P. 702.
[4] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011).
[5] *Wagoner*, 813 F. Supp. at 798 (citation omitted).
[6] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). 509 U.S. at 590, 113 S.Ct. 2786); *see also, Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc).
[7] *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786.
[8] *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (citation, alterations, and internal quotations omitted).

knowledge, skill, training, or education, may provide a sufficient basis for expert testimony."[9] "An expert witness is not strictly confined to his area or practice but may testify concerning related applications" because an expert's lack of specialization goes to the weight rather than the admissibility of the evidence.[10]

Ultimately, a court's role as a gatekeeper does not replace the adversary system.[11] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[12] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration."[13] Notably, "rejection of expert testimony is the exception rather than the rule."[14]

"Most of the safeguards provided for in *Daubert* are not as essential in a case … where a district judge sits as the trier of fact in place of a jury."[15] In a bench trial, the judge has "discretion to admit questionable technical evidence, although of course he must not give it more weight than it deserves."[16]

---

[9] *Tidwell v. ABC Ins. Co.*, No. 3:19-CV-01242, 2023 WL 2497866 at *2 (W.D. La. Jan. 23, 2023) (citing *Untied States v. Jones*, 107 F.3d 1147 (6th Cir. 1997).
[10] *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018).
[11] *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.
[12] *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.
[13] *Primrose Operation Co. V. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir.2004) (citation omitted).
[14] *Eagle Oil & Gas Co., v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-cv-00133-O, 2014 U.S. Dist. LEXIS 103537 at *10, 2014 WL 3744976, at *3 (N.D. Tex. July 30, 2014) (citation omitted).
[15] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).
[16] *Weinhoffer as Trustee of Offshore Specialty Fabricators LLC v. Davie Shoring, Inc.*, 479 F. Supp. 3d 330, 334 (E.D. La. 2020) (citation omitted).

## ANALYSIS

The Hodges et al Motion, filed by LML, moves the Court to exclude or, alternatively, limit the testimony of four defense expert witnesses: Richard "Rick" Hodges ("Mr. Hodges"), Sam Crawford ("Mr. Crawford"), John Fenstermaker ("Mr. Fenstermaker"), and Randall Rodrigue ("Mr. Rodrigue").[17] Weyerhaeuser opposes the motion.[18] LML replied to Weyerhaeuser's opposition.[19] LML does not challenge the qualifications of these experts, but instead challenges their testimony on grounds of inadmissibility and irrelevance.

**A. Hodges**

Mr. Hodges is a landman with more than forty (40) years of experience in the oil and gas industry.[20] His experience includes "general land and leasing activities to facilitate oil and gas projects" and "negotiating oil and gas leases and other surface use agreements."[21] He was retained by Weyerhaeuser to give his expert opinion on industry custom and practices.[22] Mr. Hodges rendered his expert report on January 30, 2024.[23]

First, the Court has determined that the Timber Lease is ambiguous because its terms are susceptible to either parties' interpretation as to the relationship between Weyerhaeuser's surface rights and LML's mineral rights with respect to the

---

[17] R. Doc. 105.
[18] R. Doc. 133.
[19] R. Doc. 136.
[20] R. Doc. 105-3 at 2.
[21] R. Doc. 105-3 at 2.
[22] R. Doc. 105-3 at 2.
[23] R. Doc. 105-3 at 2.

disputed third-party agreements.[24] Accordingly, LML's argument that Mr. Hodges' testimony should be excluded because the Timber Lease is unambiguous is moot.[25]

LML also asserts that Mr. Hodges' opinions are inadmissible legal conclusions — for instance, interpreting provisions in Paragraphs 6 and 7 of the Timber Lease.[26] Weyerhaeuser maintains that Mr. Hodges has not offered any conclusion about what the Timber Lease requires LML to do and that his opinions are not supported by any legal conclusions, but by his experience in the oil and gas industry.[27] The Court finds that Mr. Hodges' opinions generally do not amount to legal conclusions, but are based upon his decades long experience in the oil and gas industry. The exception, however, is Mr. Hodges' opinion as to Paragraphs 6 and 7 of the Timber Lease, where he opines as to application of these provisions on the parties. The Court considers this portion of his opinion to constitute a legal conclusion and thus it will be excluded.[28]

Further, LML contends that the Court should exclude Mr. Hodges' opinions as to what a third-party operator would customarily do in reaching agreements with LML and Weyerhaeuser to conduct operations on the property.[29] These opinions, according to LML, are based on conjecture, hearsay and are unreliable.[30] LML also points to Mr. Hodges' opinions relating to LML's post-suit oil and gas leases as

---

[24] R. Doc. 161
[25] R. Doc. 105-1 at 3-5.
[26] R. Doc. 105-1 at 4.
[27] R. Doc. 133 at 9-10.
[28] As Weyerhaeuser pointed out in its motion to exclude LML's expert Pat Ottinger, "it is inappropriate to allow an expert to opine on legal conclusions, even in a bench trial." R. Doc. 134 at 1 (citing *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Ops., LLC,* 2021 WL 535837, at *3. (E.D. La. Feb. 12, 2021)).
[29] R. Doc. 105-1 at 4-5.
[30] R. Doc. 105-1 at 5.

irrelevant and unreliable.[31] Weyerhaeuser asserts that LML's questions about the bases for Mr. Hodges' opinions do no warrant exclusion of his opinions, but are proper subjects for cross examination.[32]

The Court finds that Mr. Hodges' opinions, with the exceptions noted herein, are admissible under Rule 702 as they are supported by his industry experience and will assist the Court in understanding the custom and practice of the third-party agreements in dispute. LML's attacks on the bases of his opinions will be appropriate for cross-examination.

### B. Crawford, Fenstermaker, and Rodrigue

Mr. Crawford's expert report, produced on January 28, 2024, analyzes the impacts of oil and gas infrastructure on forest management.[33] Mr. Fenstermaker was retained to identify the areas disturbed by oil and gas operations and to provide an estimated restoration cost analysis.[34] In his expert report, produced on January 30, 2024, Mr. Rodrigue reviews twenty (20) well sites on the property and determines the cost of restoration.[35]

LML asserts that testimony from these three experts is irrelevant because Weyerhaeuser has not asserted a counterclaim for these costs.[36] LML also asserts that this testimony should be excluded because it improperly introduces damages and

---

[31] R. Doc. 105-1 at 5.
[32] R. Doc. 133 at 10.
[33] R. Doc. 105-5 at 2.
[34] R. Doc. 105-7 at 3.
[35] R. Doc. 105-8 at 2.
[36] R. Doc. 105-1 at 5-9.

cost assessments that go beyond the Timber Lease issues in dispute.[37] In response, Weyerhaeuser contends that the restoration costs directly relate to LML's calculation of damages.[38] Specifically, "[a]ny 'lost profits' analysis would need to take into account all of the expenses that LML would have incurred under its interpretation of the Contract."[39]

The Court finds Weyerhauser's argument persuasive. The relevancy of expert testimony hinges upon whether the expert's reasoning or methodology "fits" the facts of the case and will assist the trier of fact to understand the evidence.[40] The testimony of these witnesses will aid the Court in determining damages. The parties' respective obligations under the Timber Lease remain in dispute and will be resolved by the Court at trial. If the facts found at trial do not support the inclusion of the costs asserted by these witnesses, it will affect the weight, if any, to be given to their testimony. Accordingly,

## ORDER

**IT IS ORDERED** that Louisiana Minerals, Ltd.'s *Daubert* Motion or Alternative Motion in Limine to Exclude or Limit the Testimony of Certain Weyerhaeuser's Experts (the "Hodges et al Motion") (R. Doc. 105) is **GRANTED IN PART** and Rick Hodges will not be allowed to give his opinion regarding the parties' rights or responsibilities under Paragraphs 6 and 7 of the Timber Lease.

---

[37] R. Doc. 105-1 at 5-9.
[38] R. Doc. 133 at 11.
[39] R. Doc. 133 at 12-13.
[40] *Daubert*, 509 U.S. at 591.

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects.

THUS DONE AND SIGNED this 20th day of June 2025.

_____
**JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE**